KELLY, APPELLANT, *v.* NORTHERN PACIFIC RAILWAY COMPANY, RESPONDENT.

(No. 2,382.)

(Submitted February 16, 1907. Decided February 25, 1907.)

(88 Pac. 1009.)

*Master and Servant—Personal Injuries—Fellow-servant Acts— Pleadings—Complaint—Sufficiency.*

35  243
41   54
41  150
f41  151
41  472

Master and Servant—Personal Injuries—Complaint—Evidence—Variance.
    1. Where, in an action by a trainman against a railroad company to recover damages for personal injuries, alleged to have been received by reason of its negligence in running a train, objection was made to the introduction of evidence showing that plaintiff was injured through negligence on the part of the engineer in charge of the train, on the ground of variance, and sustained, and nonsuit granted, the rule, urged by appellant, that the sufficiency of a pleading may not be questioned by an objection to evidence does not apply, since the complaint in this

instance stated a cause of action for primary negligence of the defendant, and the question of variance could not have been raised prior to trial.

Same—Personal Injuries—Fellow-servant Acts—Complaint.

2.   Under either of the fellow-servant Acts (Laws, 1903, p. 156; Laws, 1905, p. 1), a complaint, in an action by a switchman against a railway company for personal injuries, alleging that ''the defendant company so carelessly and negligently managed, operated and ran'' a train of cars as to seriously injure him, was insufficient in the absence of an allegation that recovery was sought on account of the negligence of one for whose fault the statute imposes a liability on the master, to admit proof showing that plaintiff's injuries were brought about by the careless and negligent acts of the engineer in charge of the train in question.

Same—Personal Injuries—Fellow-servant Acts—Complaint.

3.   Where a servant relies for recovery of damages for personal injuries upon the provisions of either of the fellow-servant Acts (Laws, 1903, p. 156; Laws, 1905, p. 1), creating a liability on the part of the master where none existed before their enactment, he must set forth in ordinary and concise language a statement of facts showing his right to recover under such special statute.

*Appeal from District Court, Yellowstone County; C. H. Loud, Judge.*

ACTION by Harry L. Kelly against the Northern Pacific Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed.

*Mr. Harry A. Groves,* and *Mr. William Gallagher,* for Appellant.

In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties. (Code Civ. Proc., sec. 740.) The practice of questioning the sufficiency of a petition by an objection to the introduction of evidence thereunder is not to be encouraged, and such objection should be overruled if, upon any fair construction of the petition, any cause of action is stated. (*Howard* v. *Carter,* 71 Kan. 85, 80 Pac. 61.) Where no demurrer was interposed to a complaint, but issue was joined thereon, it will not be held insufficient on the ground of ambiguities or uncertainties of statement. (*Sanderson* v. *Billings Water-Power Co.,* 19 Mont. 236, 47 Pac. 998; *Rose* v. *Rose,* 112 Cal. 341, 44 Pac. 658;

*Pryor* v. *City of Walkerville*, 31 Mont. 618, 79 Pac. 240; Code
Civ. Proc., sec. 685; *Cleveland etc. Ry. Co.* v. *Berry*, 152 Ind.
607, 53 N. E. 415, 46 L. R. A. 33; *Louisville etc. Ry. Co.* v.
*Bates*, 146 Ind. 564, 45 N. E. 108.)

If the sufficiency of a pleading has not been challenged by
motion or demurrer, but is drawn in question upon the admis-
sion of evidence, a liberal construction of the allegation of
fact will be adopted. (*Patterson* v. *Patterson*, 40 Or. 560,
67 Pac. 664; *Creecy* v. *Joy*, 40 Or. 28, 66 Pac. 295; *Chan
Sing* v. *City of Portland*, 37 Or. 68, 60 Pac. 718; *Burnette* v.
*Elliott*, 72 Kan. 624, 84 Pac. 374; *Bank of Glasco* v. *Marshall*,
5 Kan. App. 252, 47 Pac. 561.) If facts are pleaded from which
an ultimate fact necessarily results, it is the same as though
such ultimate fact were specifically pleaded. (*Harmon* v. *Fox*,
31 Mont. 324, 78 Pac. 517.)

Under the rule of Code pleading that allegations are to be
liberally construed, with a view to substantial justice, whatever
is necessarily implied in or is reasonably to be inferred from an
allegation is to be taken as if directly averred. (*Malloy* v.
*Benway*, 34 Wash. 315, 75 Pac. 869.)

As illustrating the doctrine of implied pleading, see *Indian-
apolis etc. Ry. Co.* v. *Johnson*, 102 Ind. 352, 26 N. E. 200, on
rehearing; also, *Di Marcho* v. *Builders' Iron Foundry*, 18 R.
I. 514, 27 Atl. 328, 28 Atl. 661; *Indianapolis Union Ry. Co.* v.
*Houlihan*, 157 Ind. 494, 54 L. R. A. 787, 60 N. E. 943.

*Messrs. Wallace & Donnelly*, for Respondent.

A right to recover from a man for his own wrong is one thing;
a right to recover from the same man for the wrong of another
is an entirely different thing. In the one case recovery is had
for the defendant's own misconduct. In the other case, where
the person for whose wrong recovery is had is a servant of
the defendant, the recovery rests upon the principle of *respondeat
superior*, the law making the defendant answerable, though his
own individual conduct is entirely blameless. This distinc-
tion was always preserved in the forms of pleadings themselves.

An action to recover from a defendant for his own wrong was an action of trespass; an action to recover from the same defendant for the wrong of one for whom he was accountable was an action of trespass on the case. The distinction in forms of pleadings has been abolished, but the distinction between the grounds of recovery in the two cases exists and can never be abolished. (*Warax* v. *Cincinnati etc. Ry. Co.*, 72 Fed. 637.)

At the common law the principle of *respondeat superior* operated in favor of all the world except the fellow-servants of and engaged in the same common employment with the immediate wrongdoer. Such persons were held to have assumed the risk of such negligence, and, therefore, could not recover. The effect of the fellow-servant laws has been simply to extend the principle of *respondeat superior*, in the cases defined by the statutes, to the fellow-servants of the wrongdoer, as well as to the rest of the world, and to allow the servant to hold the defendant liable upon that principle just as a third person might hold him liable.

Now, as the grounds of recovery are different in the cases above instanced, so the averments of the complaint must differ according as the one theory or the other is relied upon; or, if both are relied upon in the same action, they must be stated in separate counts. (2 Labatt on Master and Servant, 733. See also, *Union Pac. Ry. Co.* v. *Wyler*, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983; *Menard* v. *Montana C. R. Co.*, 22 Mont. 340, 56 Pac. 592; *Dixon* v. *Chesapeake etc. Ry. Co.*, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121; *Brown* v. *Central Pac. R. Co.*, 68 Cal. 171, 7 Pac. 447, 8 Pac. 828; *Southern Indiana Ry. Co.* v. *Martin*, 160 Ind. 280, 66 N. E. 886; *Chicago I. & L. Ry. Co.* v. *Barnes*, 164 Ind. 143, 73 N. E. 91.)

MR. JUSTICE SMITH delivered the opinion of the court.

This action was begun in the district court of Yellowstone county to recover of the defendant corporation damages for personal injuries.

The complaint sets forth a cause of action for negligence on the part of the defendant as follows: "(3) That on the first day of November, A. D. 1905, about 9. o'clock P. M., the defendant company was backing a string of twelve (12) boxcars with one of its switch engines, in an easterly direction, over transfer track No. 2 of its yards in Billings, Montana, and while so backing its said cars the plaintiff, then in the employ of said defendant company as a field switchman and in the discharge of his duties, was passing over the top of said cars toward the east to set a brake on the east end of the east car of said string of cars, and while the plaintiff, without any fault or negligence on his part, was passing over the top of said cars as aforesaid, the defendant company so carelessly and negligently managed, operated, and run said string of cars as to cause plaintiff to be suddenly and violently thrown over the east end of said east car to the ground, whereby a wedge-shaped piece of bone was broken laterally off of the posterior portion of the head of the tibia of plaintiff's right leg, and whereby plaintiff's left ankle was severely wrenched and sprained.

"(4) That by reason of the injury aforesaid, caused by the careless and negligent acts aforesaid of the defendant, the plaintiff has suffered intense bodily pain and mental agony.

"(5) That by reason of the injury aforesaid, caused by the careless and negligent acts aforesaid of the defendant, plaintiff's right knee is stiff and his left ankle is weak, and plaintiff is informed and believes, and therefore alleges, that they will thus ever remain."

Defendant denied the material allegations of the complaint, and alleged affirmatively that plaintiff's injuries were caused by his own carelessness, and that he "assumed the risks of injury in the mode in which he was injured." On the trial the plaintiff sought to prove that he was injured through the careless and negligent acts of an engineer in the operation of the engine with which they were working. Defendant's counsel thereupon interposed the following objection: "I object, upon the ground that under the pleadings in this case no proof can

be offered of any alleged negligent action of the engineer in operating the engine attached to this string of cars, for the reasons:

"First, that the pleading here alleges negligence, not on the part of any employee of the company defendant, but only negligence on the part of the defendant company itself causing the injury to the plaintiff."

"Second, for the reason that to show negligence on the part of the engineer would be, at common law, to defeat the right of recovery, because it would be barred as being the negligence of a fellow-servant; and this complaint will not warrant a recovery upon the statutory cause of action afforded by the Act of 1905, the so-called 'fellow-servant Act,' for the reason that it does not in terms aver an essential element of said statutory right, viz., that the negligence was the negligence of some employee of the defendant company engaged in the operation of the railway; also, in connection with the statement of counsel that negligence of the engineer was proposed to be proved, you cannot show any fault of the engineer under either the Act of 1905, or the so-called 'fellow-servant Act of 1903,' because each of these Acts gives now an exceptional statutory right, and that right is dependent upon the neglect being that of some other servant or employee under the Act of 1905, or that of the engineer and other enumerated persons under the Act of 1903, and to recover under the statute, there must be an averment that the neglect relied upon and proposed to be proved was that of another employee, if under the Act of 1905, or the engineer, if under the Act of 1903."

The court sustained the objection, and plaintiff excepted to the ruling. Thereupon the following proceedings were had:

"Plaintiff's Counsel: We offer to show by this witness that on the first day of November, 1905, in the operation of switching crews in the Billings yards, in Montana, it was in violation of the duties and customs, the duties of the engineer, and also of the rules of the company, the Northern Pacific Railway Company, to suddenly stop or to in any wise stop an engine when a

field switchman was on top of the cars proceeding to set the brakes unless he had received a signal from the field switchman; that in this case, on the night in question, the plaintiff was proceeding over the tops of a string of cars, as alleged in the complaint, and that the engineer of the defendant company in charge of the engine that was attached to such train of cars negligently and carelessly caused such engine to stop suddenly, without receiving any signal from the field switchman, and thereby caused the plaintiff to be thrown from the east end of said cars; that the plaintiff was on top of said cars pursuant to the line of his duty, and that he was exercising due care to protect himself, but by reason of said negligence and carelessness of the said railway company the plaintiff's right knee was injured by causing the tibia bone to be broken, and also his left ankle was wrenched and sprained, and by reason of such injuries the plaintiff suffered intense bodily pain, and that his right knee is now stiff and also his left ankle; that the said injuries will be permanent.''

Defendant's Counsel: "And we object to the offered proof for the reasons assigned in the objection to the question itself. It is suggested that the offer covers injuries and matters of that kind, and it might be conceded that we would have no objection to the proof of injuries, etc.    In fact, I think they are conceded.''

By the Court: "Mr. Groves, does this offer contain all the evidence that you expect to introduce?''

Plaintiff's Counsel: "Yes, sir.''

By the Court: "In relation to the proof of negligence on the part of the defendant company?''

Plaintiff's Counsel: "Yes, sir.''

By the Court: "With that statement, then, I will sustain the objection.''

Plaintiff's Counsel: "Note our exception.''    (Plaintiff rests.)

Defendant's Counsel: "Then we move for a nonsuit upon the ground that there has been no negligence shown in this case or a right to recover upon the complaint herein.''

By the Court: "I will grant the motion."

Plaintiff's Counsel: "Note our exception." The court thereupon entered judgment in favor of the defendant. Plaintiff appeals.

The so-called fellow-servant Act of 1903 reads as follows: "Every railway corporation, including electric railway corporations, doing business in this state shall be liable for all damages sustained by an employee thereof, within this state, without contributing negligence on his part, when such damage is caused by the negligence of any  *  *  *  engineer.  *  *  *  " (Session Laws, 1903, p. 156.)

The Act of 1905, so far as it is material here, is as follows: "Every person or corporation operating a railway or railroad in this state shall be liable for all damages sustained by an employee of such person or corporation in consequence of the neglect of any other employees thereof  *  *  *  when such neglect  *  *  *  is in any manner connected with the use and operation of any railway or railroad on or about which they shall be employees.  *  *  *  " (Session Laws, 1905, p. 1.)

The question involved in this appeal is as follows: Was the allegation, "the defendant company so carelessly and negligently managed, operated, and ran said string of cars," sufficient to admit proof of the negligence of the engineer under either of said fellow-servant Acts?

Appellant's first contention is that the practice of questioning the sufficiency of a pleading by an objection to the introduction of evidence thereunder is not to be encouraged; and he cites cases to that effect. This question, however, does not arise in this case, because the complaint here undoubtedly states a cause of action for primary negligence on the part of the defendant, and the question of variance between the allegations of the complaint and the proof offered could not have been raised by the defendant prior to the trial.

On the main question involved, appellant has called our attention to the case of *Indianapolis etc. Ry. Co.* v. *Johnson*, 102 Ind. 355, 26 N. E. 200, on rehearing, where the court said: "It

is held in the principal opinion that the complaint was bad, because it appeared therefrom that the injury to the appellee was the result of negligence in loading the cars, and that an inference arose from the facts stated that they were loaded by his fellow-servants.'' Passing the question as to whether such inference was properly deducible in that case, it is, perhaps, sufficient to say that if, before the statute of 1903, a complaint showed on its face that the injury was caused by the act of a fellow-servant, it would be bad. In the Indiana case the court held that the inference appeared in the complaint because the negligent act complained of was one that naturally pertained to the work of a fellow-servant in loading a car.

Again, he cites the case of *Di Marcho* v. *Builders' Iron Foundry,* 18 R. I. 514, 27 Atl. 328, where the court said: ''The allegation against the defendant is that the corporation threw, or caused to be thrown, a box, etc. Since a corporation can act only through a servant, the allegation is, in effect, that the box was thrown, or caused to be thrown, by a servant of the corporation.'' It will readily be seen that this case, by the very phraseology of the allegation, could not possibly involve any of the primary duties of the corporation; but the allegation shows on its face that the injury was caused by the act of a servant of the corporation.

In the case of *Indianapolis Union Ry. Co.* v. *Houlihan,* 157 Ind. 494, 60 N. E. 943, 54 L. R. A. 787, Houlihan commenced an action against the railroad company and relied upon two acts of negligence—(1) negligence of the railway company in permitting obstructions to view; and (2) negligence of an engineer in running his engine. Plaintiff alleged in his complaint that an engine owned by the defendant company and in charge of defendant's engineer was negligently run by the engineer against plaintiff without fault on his part, inflicting permanent injuries; that the engineer negligently failed to stop the engine while approaching the crossing, and negligently failed to give any signal of the engine's approach. The court held that plaintiff assumed the risk arising from the obstruction, and that the

engineer's negligence was included in the averment that the injuries were inflicted "by reason of all of defendant's negligence as herein alleged."

In the case of *Menard* v. *Montana C. Ry. Co.*, 22 Mont. 340, 56 Pac. 592, this court said: "Plaintiff insists that he was entitled to recover under the Act of March 2, 1891, entitled 'An Act requiring railroad companies to pay for damages to stock.' (Laws, 1891, p. 267.) So much of the Act as is relevant provides that any corporation operating a railroad in Montana 'that fails to fence the same by fence suitable and amply sufficient to prevent cattle, horses, sheep and other live stock from getting on said railroad, at all points where such right to fence exists, shall be liable to the owner of any such stock injured or killed by reason of the want of such fence for the value of the property or damages caused, unless the same was occasioned by the willful act of the owner, or his agent. And in order to recover it shall only be necessary for the owner to prove the injury or destruction of his property and the value thereof. * * * ' We are of the opinion that the complaint, for failure to state that the animals were killed by reason of the want of a fence at points where the right to fence existed, is insufficient to sustain a recovery under the Act of 1891, assuming it to have been in force as to defendant. True, the Act declares that in order to recover it shall only be necessary for the owner to prove the killing of the animals and their value; but this lays down a mere rule in respect of the amount of evidence or *quantum* of proof, which in no wise aids the complaint. The rule has the effect only of dispensing with the necessity of making some proofs which, in the absence of the rule, might be deemed indispensable to a recovery, and does not supply the omission of the complaint to charge facts constituting a cause of action created by, and arising from the provisions of, the statute. In actions brought under the Act of 1891, the complaint must allege, and it seems the evidence should show, that the cattle were killed by reason of the want of such fence as the statute requires at points where the corporation had the right to fence."

Where the person for whose wrongful action recovery is sought is a servant of the defendant, the recovery rests upon the principle of *respondeat superior*. The law makes the defendant answerable, although his own individual conduct may be blameless. Labatt in his work on Master and Servant (section 733, volume 2) uses this language: "If the plaintiff intends to rely upon several distinct causes of action, as a breach of common-law duty, and the negligence of one or more of the persons for whom the employer is by these Acts (i. e., the fellow-servant Acts) rendered responsible, the facts must be alleged in separate counts." In the case at bar the principle of *respondeat superior* is not invoked at all. The plaintiff counts exclusively upon the primary negligence of the Northern Pacific Railway Company. There is no allegation that recovery is sought on account of the negligence of one for whose fault a liability is imposed by statute.

In the case of *Union Pacific Ry. Co.* v. *Wyler,* 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983, the supreme court of the United States said: "A suit based upon a cause of action alleged to result from the general law of master and servant was not a suit to enforce an exceptional right given by the law of Kansas. If the charge of incompetency in the first petition was not *per se* a charge of negligence on the part of the fellow-servant, then the averment of negligence, apart from incompetency, was a departure from fact to fact, and therefore a new cause of action. Be this as it may, as the first petition proceeded under the general law of master and servant, and the second petition asserted a right to recover in derogation of that law, in consequence of the Kansas statute, it was a departure from law to law."

But appellant says a corporation can only act through its agents and servants, and therefore, when it is said that a corporation negligently operated a locomotive, the inference is irresistible that the person "operating and running" said locomotive was the engineer. To adopt this reasoning would be to lose sight of the distinction between the acts of a corporation, which, though performed by an agent, are yet in law

primarily the acts of the principal, and those other acts of its agents which, though the master may be liable for them, are yet primarily the acts of the servant, and for which the master is only liable on the principle of *respondeat superior*. The recovery in the one case rests upon a breach of primary duty on the part of the employer, and in the other upon the principle that the master is liable for the negligent acts of those he employs in the prosecution of his business.

In the case of *Chesapeake etc. Ry. Co.* v. *Dixon*, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121, Chief Justice Fuller said: "It was stated that the 'negligence of the corporate defendant was done by and through its said servants and other of its servants then and there in its employment, and said negligence was the joint negligence of all the defendants.' Assuming this averment to be inconsistent with a charge of direct action by the company, it may nevertheless be held to amount to a charge of concurrent action when coupled with the previous averment that Dixon was killed while crossing the track at a turnpike crossing by the negligence of the company and the other defendants in charge of the train. The negligence may have consisted in that the train was run at too great speed, and in that proper signals of its approach were not given; and, if the speed was permitted by the company's rules or not forbidden, though dangerous, the negligence in that particular and in the omission of signals would be concurrent. Other grounds of concurring negligence may be imagined."

In the case of *Brown* v. *Central Pacific R. R. Co.*, 68 Cal. 171, 7 Pac. 447, 8 Pac. 828, the supreme court of California said that, as against positive allegations that the acts and omissions complained of were by the defendant, the court could not presume that they were those of a fellow-employee.

The supreme court of Indiana, in the case of *Southern Indiana Ry. Co.* v. *Martin*, 160 Ind. 280, 66 N. E. 886, used this language: "We now inquire whether a cause of action is stated under the second and fourth subdivisions of section 1 of the employers' liability Act. These subdivisions undoubtedly create a greater liability than existed at common law, but we do not

think that either of them renders the paragraph [of the complaint] sufficient. A case is not stated within the second subdivision, because of the insufficient allegations relative to the duty of the appellee to conform to the order or direction that was given with reference to the cable. It is not necessary that the precise words of the statute should be used, but no form of allegation that amounts to less than the equivalent of the words of the statute will be sufficient.''

And again, in the case of *Chicago etc. Ry. Co.* v. *Barnes,* 164 Ind. 143, 73 N. E. 91, the same court said: ''It is insisted by counsel for appellee that the complaint sufficiently discloses several acts of negligence which will render the railroad company liable either at common law, or under the employers' liability Act (sec. 7083, Burns, 1901; Acts 1893, p. 294). When tested by the rules of pleading, we think it is evident that this action is not predicated upon any of the provisions of the employers' liability Act of this state; for the rule is well settled that, when a party in his pleading seeks to avail himself of the benefits of a statute, he is required by the averments thereof to bring himself fully within the provision or provisions of the statute upon which he relies. (*Indianapolis etc. Co.* v. *Foreman,* 162 Ind. 85, 69 N. E. 669.) A complainant who seeks to base an action on any of the provisions of the employers' liability Act must by positive and direct averment of facts show that the action falls within the particular provision on which he relies.''

In order to settle the rule in this state, we decide that, where a party relies for recovery upon a special statute creating a liability where none existed before, he must set forth in ordinary and concise language a statement of facts showing his right to recover under that statute.

The judgment of the district court of Yellowstone county is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.