DA 07-0103

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2008 MT 199

EL DORADO HEIGHTS HOMEOWNERS'
ASSOCIATION,

        Plaintiff and Appellee,

   v.

KEVIN DEWITT,

        Defendant,

DIANE BOLES,

        Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Lewis and Clark, Cause No. BDV 2006-347 Honorable Jeffrey M. Sherlock, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Gregory W. Duncan, Attorney at Law, Helena, Montana

      For Appellee:

          Mona Jamison, Jamison Law Firm, Helena, Montana

Submitted on Briefs:  December 19, 2007

Decided:  June 10, 2008

Filed:

_____

                  Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Appellant Diane Boles (Boles) appeals the District Court's denial of her various motions for an amendment to or revocation of a stipulation into which she entered, and its order granting the El Dorado Heights Homeowners' Association's (HOA) motion to have Boles named as a real party in interest, holding her in contempt of the court's order dated June 5, 2006, and awarding attorney's fees to the HOA. Boles also seeks relief from the court's order requiring her to remove the red metal roof from her barn by April 15, 2007. We affirm in part and reverse in part.

## FACTUAL BACKGROUND

¶2    This case arises from a violation of the El Dorado Heights subdivision's restrictive covenants, the HOA's attempt to enforce those covenants, and Boles' concerted efforts to avoid compliance with both the covenants and a stipulation into which she entered with the HOA.

¶3    The HOA filed a complaint in District Court on May 16, 2006, requesting temporary and permanent injunctive relief, including a temporary restraining order, to prohibit Kevin Dewitt (Dewitt) from continuing construction on Lot #38 within the El Dorado Heights subdivision. The HOA claimed that Dewitt's construction plans violated the restrictive covenants and Architectural Guidelines of El Dorado Heights, of which Dewitt had notice. Specifically, his plans called for the use of prohibited materials and colors on proposed buildings, and reflected improper setbacks from the road. The HOA also requested an award of costs and attorney's fees. The court signed the temporary

2

restraining order on May 16, 2006, and scheduled a show cause hearing for May 30, 2006.

¶4 On May 30, 2006, Dewitt filed his answer and counterclaim. Dewitt denied ownership of Lot #38, and asserted that Boles was the owner. Dewitt also denied that the roofing materials and other building plans violated the covenants. He made other claims and allegations not relevant here.

¶5 Despite having filed an answer, Dewitt never appeared at the show cause hearing. Rather, the HOA representatives and Boles, together with counsel, appeared before the court to state that the parties had reached an agreement regarding the alleged violations of El Dorado Heights' restrictive covenants. The parties acknowledged that Boles was the owner of Lot #38, not Dewitt, but indicated that in light of their agreement, it would not be necessary to formally amend the complaint to reflect Boles as the proper party defendant.

¶6 Counsel for the HOA explained that a new building plan had been submitted by Boles and that, except for the red metal roof on her barn, the new plans satisfied the covenants. The HOA moved to dismiss the temporary restraining order and its request for a preliminary injunction in exchange for Boles' promise to remove the red metal roof within ninety days. The HOA also agreed to make Boles chairperson of the HOA working group that would be reviewing and possibly amending the covenants by way of a vote of the membership.

¶7 The parties put their agreement in writing and called it a "stipulation." The stipulation was signed by Paul Jagoda, president of the HOA, and his attorney, and by

3

Boles, record owner of Lot #38 in the El Dorado Heights subdivision, and her attorney. The stipulation was filed on June 2, 2006. The court entered the stipulation into the record on June 5, 2006, and dissolved the temporary restraining order. Pursuant to the stipulation, Boles would be allowed to continue construction on her land. The stipulation further provided that the president and vice president of the HOA could not guarantee the final content of any revised covenants that might be put to a vote of the HOA membership or that any proposed amendments would pass.

¶8 On August 21, 2006, Boles moved to substitute counsel and her motion was granted. Ten days later, on August 31, 2006, Boles filed a motion seeking a stay and amendment or rescission of the stipulation. She then filed a brief and affidavits of various professionals, along with homeowners within El Dorado Heights, to support her contention that her roof did not violate the covenants because it was a naturally occurring color as the covenants required, and it was made of a type of metal and manufacture not prohibited under the covenants.

¶9 Boles asserted many alternative arguments in her motion for relief from the stipulation. She asserted that even if her roof was a violation of the covenants, the covenants were void for vagueness, arbitrarily enforced, and a violation of the state's public policy regarding prevention of wildland-urban interface fires. She also argued that because HOA failed to name her as a defendant and serve her with a summons and complaint, the HOA could not hold her responsible for any violation of the covenants or provisions of the stipulation. In addition, she maintained that her failure to raise these points at the time of the show cause hearing was due to inadequate assistance of counsel.

4

Finally, she argued that the affidavits of several other homeowners in El Dorado Heights illustrated that the covenants would be changing soon and that it would cause her significant financial loss to remove the roof only to have the covenants allow such a roof at a later date. Therefore, she reasoned, she should not have to comply with the stipulation into which she entered on June 2, 2006.

¶10 The HOA responded with a motion seeking to hold Boles in civil contempt for her violation of the court order issued June 5, 2006, and seeking costs and attorney's fees for being compelled to seek judicial enforcement of the court's order. HOA maintained that the August 31, 2006 deadline for removal of the red roof had passed and Boles' failure to remove the roof was a violation of the court order incorporating the stipulation of the parties.

¶11 Subsequently, Boles submitted petitions signed by various homeowners in the subdivision requesting that Boles not be required to remove her roof, and reflecting their agreement to amend the covenants. Boles also submitted proposed signed Amendments to the Declaration of Restrictions, covenants, and conditions, and more affidavits stating that the covenants would likely be amended, though no amendment had taken place yet. Boles blamed the fact that the amended covenants had not been approved yet on the HOA president and vice president.

¶12 On September 28, 2006, Boles filed a document entitled "Statement of Limited Appearance." In it, she challenged the District Court's exercise of jurisdiction over her as she was still not a named party in the action. The next day, the HOA filed a motion to substitute Boles as the real party in interest for Dewitt.

¶13 The court held a hearing on the various motions on November 21 and 27, 2006. The court narrowed Boles' arguments for vacating the stipulation down to eight: (1) inadequate representation by prior counsel; (2) the roof material complied with the covenants; (3) deception by HOA and its counsel to the effect that a change in the covenants would mean she would not be required to remove her roof; (4) no meeting of minds in the stipulation; (5) removal of the roof would result in significant, inequitable loss to Boles; (6) enforcement would not further the purpose of the covenants; (7) the court lacked personal jurisdiction over Boles; and (8) safety and welfare concerns justified the court's intervention in favor of amending the stipulation. The court proceeded to reject all of Boles' arguments and motions. In an order dated January 3, 2007, the court denied Boles' motion to rescind the stipulation and ruled in favor of the HOA on its motion for civil contempt and its motion to substitute. Subsequently, on February 14, 2007, the court entered an order awarding attorney's fees to the HOA as a sanction against Boles under § 3-1-501(3), MCA, and pursuant to its equitable powers, stating it would be "incredibly unfair" to force the plaintiff to incur substantial attorney's fees under these circumstances, and that the court's equitable powers "are designed to prevent just such a situation as this." The court also ordered that the roof be removed, and that Boles suffer a fine of $300 per day for each day past the court's deadline that Boles fails to remove the roof. Boles now appeals.

**DISCUSSION**

¶14 Our standard of reviewing a district court's order denying relief from a previous court order depends on the nature of the final judgment, order, or proceeding from which

6

relief is sought and the specific basis of the M. R. Civ. P. 60(b) (Rule 60(b)) motion. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, ¶ 16, 166 P.3d 451, ¶ 16. Generally we review a district court's Rule 60(b) ruling for an abuse of discretion. *Essex*, ¶ 16. Where the specific basis of the motion is a conclusion of law, such as a district court's determination that it had personal jurisdiction, we review the denial of the motion de novo, like any other conclusion of law. *Essex*, ¶ 16.

¶15 With exceptions not applicable here, the order of a district court made in cases of contempt is final and conclusive, and there is generally no appeal therefrom. Section 3-1-523(1), MCA; *Schaefer v. Egeland*, 2004 MT 199, ¶ 10, 322 Mont. 274, ¶ 10, 95 P.3d 724, ¶ 10. However, we will review a contempt sanction to determine if it is legally complicit with the statutes authorizing a contempt sanction. We review a district court's decision to award attorney's fees pursuant to its equitable powers for an abuse of discretion. *Goodover v. Lindey's Inc.,* 255 Mont. 430, 449, 843 P.2d 765, 776 (1992).

¶16 Construing the District Court's order denying Boles' motion to rescind the stipulation—which had been entered as a court order—as an order issued in response to a Rule 60(b) motion, we turn to Boles' arguments. First, the District Court concluded that it had personal jurisdiction over Boles pursuant to M. R. Civ. P. 4(B)(2), and authorizing it to enforce court orders through commitments for civil contempt in the district where the court order originated. The court determined that, even though Boles was not named or served as a defendant originally, she was still subject to the court's jurisdiction because she had already appeared in the case many times, both physically in court and through motions and briefs submitted to the court through her attorney. We agree with

7

the District Court's conclusion of law. Lack of personal jurisdiction is a defense that must be raised at a defendant's initial appearance or response. *Foster Apiaries, Inc. v. Hubbard Apiaries*, 193 Mont. 156, 160, 630 P.2d 1213, 1215 (1981). In all appearances and filings until September 28, 2006, when she filed a Notice of Limited Appearance, Boles had recognized the jurisdiction of the court and did not raise any defense of lack of personal jurisdiction. Once she consented to the court's jurisdiction, she waived the defense of no personal jurisdiction. *Foster Apiaries, Inc.*, 193 Mont. at 160, 630 P.2d at 1215. The stipulation, and its subsequent incorporation into a court order, reflects her consent to the District Court's exercise of in personam jurisdiction over her for purposes of resolving the disputes before the court. *See Cardneaux v. Cardneaux*, 1998 MT 256, ¶ 12, 291 Mont. 230, ¶ 12, 967 P.2d 410, ¶ 12. In addition, we agree with the District Court that Boles' brief in support of a motion to rescind the stipulation was not the proper vehicle for placing her allegations of ineffective assistance of counsel before the court.

¶17 Second, we agree with the District Court that no credible evidence exists in support of Boles' claim that the HOA coerced her into signing the stipulation under the guise of changing the covenants to accommodate her roof, nor is there any credible evidence that the HOA interfered with Boles' attempts to bring the amendments to a vote.

¶18 We further agree with the District Court that the covenants clearly, though perhaps not artfully, prohibit metal roofs. Moreover, no credible evidence supports Boles' assertion that the HOA engaged in disparate enforcement of the covenants. Any other violation of the HOA covenants in no way excuses Boles' violation of the covenants,

8

nor—in particular—do they excuse her violation of a court order incorporating that stipulation.

¶19    The stipulation was a valid agreement made upon mutual consideration. We agree with the District Court that Boles' initial motion to rescind the stipulation would have been more appropriately addressed as a Rule 60(b) motion seeking relief from a final order, than a motion seeking relief from a stipulation (or mere agreement) between the parties, as the stipulation became a court order when entered as such on June 5, 2006. Moreover, as the District Court correctly concluded, there is no reason under Rule 60(b) to relieve Boles from the final judgment.

¶20    Accordingly, we conclude the District Court did not err or abuse its discretion in denying Boles' motions, granting HOA's motions, holding Boles in contempt of the June 5 order requiring her to remove her roof within ninety days, and requiring Boles to remove it by April 15, 2007. However, we vacate that portion of the order which provides that Boles suffer a fine of $300 per day for every day thereafter that she fails to remove the roof. Under § 3-1-520, MCA, a sanction imposed for a contempt that seeks to compel the contemnor to perform an act within her power may not exceed $500. Therefore, this sanction is remitted to a maximum of $500.

¶21    Finally, we address the District Court's order imposing HOA's attorney's fees on Boles both as a sanction for civil contempt, and pursuant to its equitable powers. We first address the fees as a sanction for contempt. The court entered the order of fees as a sanction in response to a motion for a finding of civil contempt made by the HOA.

9

However, we conclude that the contempt order the court issued was not in fact a civil contempt, but rather was a criminal contempt. The distinction is important.

¶22 Section 3-1-501, MCA, defines what actions are contemptuous and distinguishes between civil and criminal contempts. Section 3-1-501(3), MCA, provides in pertinent part:

> A contempt may be either civil or criminal. A contempt is civil if the sanction imposed seeks to force the contemnor's compliance with a court order. A contempt is criminal if the court's purpose in imposing the penalty is to punish the contemnor for a specific act and to vindicate the authority of the court. If the penalty imposed is incarceration, a fine, or both, the contempt is civil if the contemnor can end the incarceration or avoid the fine by complying with a court order and is criminal if the contemnor cannot end the incarceration or avoid the fine by complying with a court order.

¶23 In *Huffine v. Montana Sixth Jud. Dist. Court*, 285 Mont. 104, 108, 945 P.2d 927, 929 (1997), we explained:

> [I]t is the character and purpose of the punishment which the court chooses to impose that serves to distinguish between civil and criminal contempt. If the sanction is 'singularly designed and intended to force the violator's compliance with the court's order,' the contempt is properly classified as civil. However, if the court's purpose is to punish the contemnor for a specific act done and to vindicate the authority of the court, the contempt is criminal. [Internal citations omitted].

¶24 Here, the court indicated in its February 14, 2007 order approving the plaintiff's request for attorney's fees that

> it would be inequitable to allow Boles to refuse to perform an oral and written stipulation that she presented to this Court and to suffer no punishment for that. All of these proceedings have been caused by Boles' refusal to honor her word that was given in Court through her attorney and in a writing which was signed by Boles and presented to this Court. All of these proceedings have been caused by Boles' failure to comply with the Court's Order that was premised upon her own agreement. To force

10

Plaintiff to incur substantial attorney fees because of Boles' actions would be incredibly unfair to Plaintiff.

Thus, it is evident that the court's purpose was to "punish the contemnor for a specific act done . . ." (*Huffine*, 285 Mont. at 108, 945 P.2d at 929), and not to force compliance with a court order. Therefore, the order of attorney's fees constituted a criminal as opposed to a civil contempt.

¶25 Because the court's order of attorney's fees as a punishment for contempt must be classified as a criminal contempt under the above statute, the procedures set forth in Title 46, MCA, must be implemented. *Huffine*, 285 Mont. at 110, 945 P.2d at 931. Criminal penalties may not be imposed unless the person subjected thereto has been afforded the proper protections and due process, including being found guilty by proof beyond a reasonable doubt. Section 3-1-501(4), MCA; *Huffine*, 285 Mont. at 110-111, 945 P.2d at 931. Here, because such protections were not afforded to Boles, we cannot uphold the order of attorney's fees as a criminal contempt sanction. However, the court also stated that its award of fees was entered pursuant to the court's equitable powers. It is this alternative basis for the fee award to which we now turn.

¶26 The District Court stated in its order awarding attorney's fees that the fees were also being imposed to avoid undue harm to the plaintiff, pursuant to the court's equitable powers. Boles challenges the equitable basis for the award of attorney's fees. She points out that we have awarded attorney's fees as a matter of equity where a party has been drawn into meritless or frivolous litigation, through no fault of its own, and incurred attorney's fees as a result. *See Foy v. Anderson*, 176 Mont. 507, 511-12, 580 P.2d 114,

11

117 (1978). Boles argues that she did not draw the HOA into litigation; rather, the HOA instituted these proceedings.

¶27 Since *Foy* was decided, we have consistently held that the equitable exception allowing an award of attorney's fees in the absence of a contract or statutory basis will be narrowly applied, and will be limited to those cases in which the prevailing party has been forced to defend against a frivolous or malicious action. *Pankratz Farms, Inc. v. Pankratz*, 2004 MT 180, ¶ 91, 322 Mont. 133, ¶ 91, 95 P.3d 671, ¶ 91. While this limitation upon an equitable award of attorney's fees would in most cases preclude an award of attorney's fees to a prevailing party who commences the litigation, we conclude that the particular circumstances presented here support the imposition of an equitable award of attorney's fees in favor of the HOA.

¶28 As the District Court noted, Boles entered into a simple and understandable stipulation upon the advice of counsel, which agreement became the basis for a court order. Had Boles thereafter complied with the agreement, there would have been no further litigation and there would have been no order of fees. However, Boles refused to follow the agreement and thereafter multiplied the proceedings in repeated attempts to avoid compliance.

¶29 Notably, the court rejected as meritless Boles' many arguments for vacating the stipulation. *See* ¶ 13. Moreover, it is significant that the attorney's fees awarded by the District Court were charged for services occurring *after* August 31, 2006, which was the date upon which Boles filed her motion seeking rescission of the stipulation. *See* ¶ 8. Therefore, all of the fees charged by the HOA stemmed directly from Boles' meritless

12

attempts to avoid compliance with the stipulation, and not from any of the time expended by counsel between the time the suit was filed by the HOA and the date upon which an ostensible settlement was reached between the parties.

¶30 Accordingly, we conclude that because the HOA was forced to defend against Boles' frivolous attempts to avoid the consequences of her own promise, and because the fees imposed flowed from its defense against those frivolous actions, the District Court did not abuse its discretion in imposing an award of attorney's fees under *Foy* and its progeny.

**CONCLUSION**

¶31 We vacate the order of the District Court imposing a fine of $300 per day for every day past the court's deadline that the plaintiff refused to remove her roof, and remit the fine, as set forth in ¶ 20. We reverse the court's award of attorney's fees as a sanction for contempt, but affirm the award of attorney's fees under the court's equitable powers. In all other respects, the court's orders are affirmed.

/S/ PATRICIA COTTER

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ BRIAN MORRIS

13